UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL A. GONZALEZ-CHAVEZ, | Case No.: 1:12-cv-02053 JLT |
| Plaintiff, | ORDER ON MOTIONS IN LIMINE |
| v. | (Docs. 41, 44) |
| CITY OF BAKERSFIELD, et al., | |
| Defendants. | |

## I. Background

The complaint alleges that on December 4, 2011, at 3:15 a.m., Bakersfield Police Officers, Messick and Barthelemes confronted Plaintiff who was sitting in a friend's car in a WalMart parking lot. (Doc. 1 at 4) The complaint alleges the officers forcibly removed Plaintiff from the vehicle, "hit him with weapons and/or punches about his arms, legs, face and body, and [they] tase[d] him without cause, provocation or justification." Id. at 4-5. Plaintiff claims he suffered injuries including a fractured knee. Id. at 5. Based upon these allegations, Plaintiff brings claims under 42 U.S.C. § 1983 against the officers for the use of excessive force.[1]

## II. Legal Standards Governing Motions in Limine

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of

---

[1] The Monell claim set forth against the entity was dismissed via a stipulation. (Doc. 34)

1

1 trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984).  The Ninth Circuit explained motions in
2 limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present
3 potentially prejudicial evidence in front of a jury." Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir.
4 2003) (citations omitted).

5 Importantly, motions in limine seeking the exclusion of broad categories of evidence are
6 disfavored.  See Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975).  The
7 Court "is almost always better situated during the actual trial to assess the value and utility of
8 evidence." Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).  The Sixth Circuit
9 explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in
10 trial]" as opposed to ruling on a motion in limine.  Sperberg, 519 F.2d at 712.  Nevertheless, motions
11 in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded
12 management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d
13 436, 440 (7th Cir. 1997).

14 "[A] motion in limine should not be used to resolve factual disputes or weigh evidence," C &
15 E Services, Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the
16 province of the jury.  See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150 (2000).

17 **III.    Plaintiff's Motions in Limine**
18 **A.    Plaintiff's Motion in Limine #1 to exclude evidence of what occurred before
19 Defendants arrived at the scene**

20 Plaintiff seeks to preclude Defendants from introducing evidence of what occurred before the
21 officers arrived at the scene.  (Doc. 44 at 1)  In particular, Plaintiff seeks to exclude evidence of a
22 fight and anti-gay slurs and any other circumstances of which the officers were unaware.  Id. at 2-3.

23 Defendants argue that this evidence is admissible for several reasons.  First, they argue that
24 the evidence is pertinent to explain Plaintiff's state of mind and to explain the need for the offices to
25 use force based upon his aggressive and belligerent state and Plaintiff' motive for resisting arrest.
26 (Doc. 51 at 3)  Defendants rely upon Tierney v. Davidson, 133 F.3d 189 (2d Cir. 1998), for the
27 proposition that the evidence should not be excluded.  In Tierney, the officer had been told that a
28 "bad" domestic dispute was occurring at the time he was dispatched and had been told that the

1  shouting had stopped just before they arrived. Id. at 197.  Then, as he approached the house, the
2  officer saw a broken window pane and he concluded that both participants in the fight were present
3  in the house. Id.
4         Here, review of the deposition of Barthelmes indicates that when the officers were
5  dispatched, they were told a "large fight involving several subjects" was occurring at the scene.
6  (Barthlemes Depo at 36.)  Before they approached Plaintiff, they learned additional information
7  from other officers including that a person ran from the police as they arrived and that a Hispanic
8  person with a shaved head struck someone else on the head with a pipe. Id. at 54-55.  They learned
9  also that the Hispanic person with a shaved head was in a silver car in a different area of the parking
10 lot where the fight occurred. Id.   Finally, Barthelmes was told that Plaintiff (the person seated
11 behind the driver) was the person who committed the assault. Id. at 67.  Barthelmes also made
12 observations before the scuffle including that in the car was an open beer can and open beer bottle
13 and that he "reek[ed]" of alcohol. Id. at 71-72, 103.  Likewise, he observed Plaintiff's demeanor and
14 heard his refusal to comply with orders to exit the car. Id. at 68-73.
15        Officers' conduct is evaluated from the perspective of a reasonable officer on the scene
16 regardless of the actual motivation of the particular officers. Graham v. Connor, 490 U.S. 386, 397
17 (1989).  Thus, if an officer reasonably would have known about events that occurred before the
18 officer arrived at the scene, the evidence may be introduced.  Thus, to this extent the motion is
19 **DENIED** and the officers may testify as to all of the information that would have been reasonably
20 known to an officer on the scene.
21        On the other hand, Defendants argue they should be permitted to introduce evidence of what
22 transpired before the dispatch was made and, indeed, before any events which gave rise to a call to
23 the police.  In particular they assert that before the events at the WalMart parking lot, Plaintiff and
24 three friends were in the silver car across the street at a gas station where a taco catering truck was
25 parked. Defendants argue that the events of the evening were instigated by an exchange between
26 Plaintiff's group and another group—against whom the fight ultimately was waged—and a young
27 woman and a young homosexual man.  Defendants argue that members of Plaintiff's group tell a
28 vastly different account of what transpired at the taco truck than those with whom they fought.

Defendants contend they should be permitted to introduce evidence of the pre-fight events to impeach Plaintiff and his witnesses' given Defendants' claim their accounts vary from each other's and from their opponents of that evening. Defendants argue this evidence is relevant to attack their credibility and/or their ability to perceive—based upon the argument that the members of Plaintiff's group were intoxicated.

Federal Rules of Evidence 608 permits an opponent to attack a witness' credibility with specific instances of conduct but precludes the examiner from introducing extrinsic evidence of collateral matters[2] except where the witness has given a prior inconsistent statement. Fed. R. Evid. 613(b); United States v. Higa, 55 F.3d 448, 452 (9th Cir. 1995). A matter is collateral if it could be introduced even if it lacked its impeaching character. Higa, at 452.

Here, whether Plaintiff and his friends were the instigators of the fight does not impact whether the officers used reasonable force when they encountered Plaintiff. Therefore, the events at the taco truck are collateral to the claims raised by this litigation. As a result, the Court holds that Defendants may impeach Plaintiff and the witnesses with their prior inconsistent statements if they testify differently at trial. Likewise, though Defendants may ask questions about what occurred at the taco truck, they are precluded from introducing extrinsic evidence to contradict the witnesses' testimony about what occurred at the taco truck.

Finally, assuming the events at the taco truck are relevant to demonstrate Plaintiff and his witnesses were so intoxicated as to be unable to adequately recall the events of the evening, the Court would preclude the introduction of this evidence under Fed. R. Civ. P. 403, because the probative value of this evidence is outweighed by the likelihood of confusing the jury that it must determine what actually occurred at the taco truck and wasting time. Therefore, the motion is **GRANTED in PART** and **DENIED in PART.**

**B.     Plaintiff's Motion in Limine #2 to exclude evidence of alcohol containers in the vehicle including photos of the containers**

Plaintiff seeks to exclude evidence that there were alcoholic beverage containers in the

---

[2] "A collateral contradiction is typically one on a point not related to the matters at issue, but designed to show that the witness' false statement about one thing implies a probability of false statements about the matters at issue. McCormick, Handbook of the Law of Evidence § 47 at 97-98 (Edward W. Cleary revisor, 2d ed. 1972)." Higa, 55 F.3d at 452.

1  vehicle.  Plaintiff argues that there is no dispute that he was intoxicated at the time of his contact
2  with the police and, as a result, argues that this evidence is not probative of any disputed issue.
3  (Doc. 44 at6-7)  Likewise, Plaintiff argues that because there is no evidence that he attempted to use
4  the beer bottle as a weapon, evidence about the beer bottle should not be admitted because it
5  represents only a potential act, not an actual one. Id.

6  However, it is just this potential which makes the evidence admissible.  A reasonable officer
7  when confronting such a situation as here, could consider the fact of the existence of the open beer
8  as information that may explain a suspect's conduct and could cause the officer to be concerned as to
9  whether the bottle could be used as a weapon—as Barthelmes testified.  (Barthelmes Depo at 71-72)
10 in light of the other information that had been gathered, that Plaintiff was thought to have struck
11 another person in the head with a pipe, the existence of the bottle within his reach may have
12 provided a reason for the officers to choose one course of action over another. Graham, 490 U.S. at
13 397.

14 Moreover, in light of the fact that Plaintiff will admit that he was intoxicated, the Court does
15 not find that admitting this evidence is unduly prejudicial and the probative value of the evidence, as
16 set forth above, outweighs any undue prejudice.  Thus, the motion is **DENIED**.

17 **C.     Plaintiff's Motion in Limine #3 to exclude facts listed in Dr. Huene's report that did not**
18 **impact his opinion**

19 Plaintiff seeks to exclude information listed in Dr. Huene's report that did not impact his
20 opinions of the case.  (Doc. 44 at 9-10)  Notably, Plaintiff does not indicate what these facts are no
21 set forth grounds to believe that the report itself will be admitted.

22 On the other hand, review of the portions of Dr. Huene's deposition provided to the Court,
23 makes it appears likely that as to the deposition questions asked about certain facts—presumably the
24 same ones at issue in this motion—Dr. Huene indicated that the facts did not impact his opinions.
25 For example, the fact that the incident occurred at a WalMart parking lot, that Plaintiff was there
26 with a woman and a gay man and that a person agreed to dance for someone else, does not appear to
27 the Court as information that could impact any opinion about the nature or extent of Plaintiff's
28 physical injuries and, therefore, would be irrelevant.  Fed. R. Evid. 401.

1 However, Plaintiff fails to set forth specifically the facts he believes are at issue and the
2 Court declines to wade through the deposition transcript to determine which facts Plaintiff wants
3 precluded from admission.  It is clear that not all of the facts about which Plaintiff asked Dr. Huene
4 at his deposition should be precluded.  For example, Dr. Huene noted that the fact that Plaintiff was
5 intoxicated would make his patella injury less painful.  (Doc. 44 at 35) However, Dr. Huene
6 indicated that the fact Plaintiff was drunk did not impact his opinion that Plaintiff suffered the knee
7 injury.  Id.  Plaintiff fails to offer any analysis as to how this situation, for example, should be
8 addressed by the Court.

9 The Court agrees also that Dr. Huene is entitled to testify as to the information he reviewed
10 and the investigation he undertook to allow the jury to evaluate the reliability of his opinions. Fed. R.
11 Evid. 703. Also, there can be no dispute that Dr. Huene may testify as to information that is
12 otherwise inadmissible if it forms a basis for his opinion.  Id.  However, this otherwise inadmissible
13 evidence may be admitted only if the probative value exceeds the prejudicial effect.  Id. Finally, the
14 Court agrees that the fact that Plaintiff gave a different account or provided additional detail to Dr.
15 Huene than at other times could impact Plaintiff's credibility and could bear on his medical
16 condition.  (Doc. 51 at 6)   The fact that Dr. Huene is an expert does not mean that his testimony
17 must be limited only to his opinions.  Thus, he is not precluded from offering this evidence even if it
18 does not impact his opinions as long as it is relevant to another issue. Thus, the motion is **DENIED**
19 without prejudice.

20 **D.    Plaintiff's Motion in Limine #4 to exclude evidence of any convictions suffered by any**
21 **witness called by Plaintiff**

22 Plaintiff argues that evidence that any of his witnesses have suffered a criminal conviction
23 should not be admitted because discovery has not addressed this topic and counsel for Defendants
24 has denied being aware of any criminal history for any witness. (Doc. 44 at 10)  However, Plaintiff
25 has failed to demonstrate that he has made a discovery request for information about criminal
26 convictions suffered by these witnesses.  To the contrary, Defendants deny there was ever any such
27 discovery propounded. (Doc. 51 at 6)  Thus, it is unclear why Plaintiff believes the information
28 should be excluded, if it exists. If Plaintiff has failed to inform himself of the witnesses criminal

histories—through a public records search or simply asking the witnesses directly—this failure does not preclude Defendants from presenting this evidence.

Federal Rules of Evidence 609(a) provides in relevant part,

> The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
> (1)     for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>     (A)     must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; . . .

Except in certain circumstances—apparently not present here—a conviction will not be admitted if more than 10 years have passed since the time the witness was released from confinement on the charge. Fed. R. Evid. 609(b). However, the 10-year presumptive bar does not apply if the witness remains in custody for the charge. Id. In either situation, the conviction may not be admitted if its probative value is outweighed by its prejudicial effect. F.R.E. 609(b).

Therefore, Plaintiff's motion is **DENIED**. However, the parties SHALL NOT introduce evidence of a conviction that is more than ten years old or evidence of a conviction where the person has been released on the charge more than ten years ago without first raising this issue with the Court outside of the presence of the jury.

**E.     Plaintiff's Motion in Limine #5 to exclude Curtis Cope from opinion as to Plaintiff's blood-alcohol content at the time of the incident**

Plaintiff seeks to preclude Curtis Cope—the expert retained by Defendants related to police procedures—from stating his opinion as to Plaintiff's blood-alcohol content at the time of the incident. Plaintiff provides Cope's deposition transcript in which Cope testified that he was aware that Plaintiff had drunk "six to ten—large" drinks. (Doc. 44 at 19) He explains that with 80-proof vodka, a 1.5 ounce shot will cause "a 0.3 alcohol blood content level elevation." Id. Cope then concluded that if Plaintiff had six drinks with this amount of vodka in each, "that brings him to a 1, 8 minimum. If he's had ten, now he's up to a 3, 0." Id. Cope testified that the level Plaintiff's intoxication explains why he had many gaps in his memory about the events of the evening at issue, although he allowed that the passage of time may account for some memory loss. Id. at 20.

Defendants agree that Mr. Cope will not be offering any testimony about Plaintiff's any

7

numerical rating of Plaintiff's blood-alcohol content.  (Doc. 51 at 7)  However, Defendants argue Cope will testify about the information known to him about the number of drinks Plaintiff had consumed and the time period over which he drank them.  Thus, the motion is **GRANTED**.

### IV. Defendants' Motions in Limine

#### A. Defendants' Motion in Limine #1, 2, 5, 6 and 9

Plaintiff has no opposition to Defendants' motions #1, 2, 5[3], 6 and 9.  Thus, these motions are **GRANTED**.

#### B. Defendants' Motion in Limine #3 to exclude evidence from the defendants' personnel files

Defendants seek to preclude introduction of evidence from Defendants' personnel file. Seemingly, they seek to limit the introduction of evidence of "other acts."  Defendants argue that the slight probative value of this evidence is far outweighed by the prejudicial effect.  (Doc. 41 at 9) They admit that federal law, rather than state authorities, governs this analysis.

In Carter v. District of Columbia, 795 F.2d 116 (D.C. Cir. 1986), the court determined that the trial court erred in admitting evidence of the personnel files of the individual defendants which contained, "highly inflammatory complaints and allegations that were unquestionably capable of causing unfair prejudice to the defendants." Id. at 129.  Under the guise of introducing Monell evidence, the plaintiff's attorney was allowed to read to the jury the complaints and inquire of the witness, in essence, whether he was aware of the complaints.  Id. at 129-131.  In finding this to be an abuse of discretion, the court held,

> Permitting the jury to consider the complaints and accounts of misconduct contained in the personnel files of Officer Vanderbloemen and the other defendants presented a grave danger of unfair prejudice. Following the reading of account after account of alleged misconduct by the defendants, there was a significant risk that the jury would conclude that the evidence established the bad character of the defendants and that the defendants were likely to have acted in the same way on the night in question. Use of the "other acts" evidence for this purpose is, of course, precisely what Rule 404(b) proscribes [footnote omitted].

---

[3] Despite the statement of non-opposition, Plaintiff argues that argument related to police misconduct should not be precluded.  Exactly what Plaintiff means by this is not clear.  Argument must be based upon the evidence presented.  If there is evidence submitted to the jury that Defendants engaged in misconduct, counsel can call it that.  However, argument that other officers on other occasions engaged in misconduct is improper because there will not have been evidence presented on this topic.

8

1  Id. at 131.  The court continued, "The evidence of the defendants' other acts and misconduct, in the
2  form admitted, was of scant, if any, probative value for any permissible purpose.  Therefore, we think
3  that the risk of unfair prejudice more than substantially outweighed the evidence's probative value.
4  The district court's apparent conclusion to the contrary failed to take into account the availability of
5  other means of proof and was therefore an abuse of discretion." Id. at 132.
6       On the other hand, seemingly, Plaintiff agrees that "other acts" evidence should not be
7  admitted but argues that evidence of the training received by Barthelmes regarding the use of the
8  taser should be admitted.  (Doc. 55 at 2-3) Plaintiff argues that Barthelmes testified that he
9  downloaded the information from the taser but did so in a manner that was contrary to his training,
10 thus, causing the destruction of the data.
11      Though it is likely the training records are contained in the personnel file, this motion is not
12 directed at excluding those records.  Thus, the motion is **GRANTED**.  To the extent that Plaintiff
13 believes there is evidence of Barthelmes' wrongdoing related to how the taser was downloaded, he
14 has not presented it to the Court and thus, the Court declines to consider at this time the request that
15 a jury instruction related to destruction of evidence.
16      **C.    Defendants' Motion in Limine #4 to exclude evidence photographs taken after**
17 **the incident**
18      Defendants seek to preclude introduction of photographs taken of Plaintiff, apparently, while
19 receiving medical treatment.  (Doc. 41 at 9) Defendants produce copies of the photos which seem to
20 show various scrapes, cuts and abrasions and show Plaintiff wearing a neck brace.  Id. at 16-27.
21      The first photo shows Plaintiff lying face-up on a gurney with his shirt open and wearing a
22 neck brace.  (Doc. 41 at 16)  At this point, it is not clear whether Plaintiff claims to have suffered
23 any injury to his neck or spine and the Court has no information as to why the brace was placed on
24 Plaintiff.  If it was purely precautionary, it appears the photo has little probative value.
25      The second and third photo show two small circular abrasions on Plaintiff's left side.  (Doc.
26 41 at 17-18)  The fourth and sixth photos show an injury to Plaintiff's right knee that has been
27 bandaged and a scrape on his shin.  Id. at 19, 21.  The fifth photo shows a scrape below Plaintiff's left
28 kneecap.  Id. at 20.  The seventh photo shows an oblong, "race-track shaped" area of redness on

Plaintiff's right arm, which appears to be about two to three inches wide and what appears to be some dried blood near the wrist. Id. at 22. The next photo shows a small, circular scrape on Plaintiff's right wrist. Id. at 23. The next photo shows a rim of dried blood on the left portion of Plaintiff's upper lip. Id. at 24. The next photo shows a large banner-shaped tattoo across Plaintiff's abdomen and tattoo of a woman's head and shoulders over his right chest area. Id. at 25. The next two photos show a red abrasion on Plaintiff's left bicep. Id. at 26 at 27.

Defendants argue the photos are inflammatory and would be introduced only to incense the jury. The Court disagrees. The photos are not graphic or gory. While there are scrapes, redness and blood shown in the photos, none of the injuries appear, at least from what can be seen in the photos, to be significant, the amount of blood present is relatively minor and there are relatively few injuries in total. On the other hand, the pictures show where on his body Plaintiff suffered injuries and will better allow the jury to judge the causal connection between the parties' actions and the damages claimed. Thus, the Court finds the probative value of the photos is not outweighed by their prejudicial impact and the motion is **DENIED**.

### D. Defendants' Motion in Limine #7 to exclude witnesses not previously disclosed

Defendants seek to preclude testimony by any witness who was not properly disclosed during discovery. (Doc. 41 at 10)

Federal Rules of Civil Procedure 26(e) requires a party who has responded to an interrogatory or who has made a disclosure under Rule 26(a) to supplement its response in a timely manner if the party learns that its response is incomplete <u>and if the additional information has not otherwise been made known to the other party during the discovery process</u>. A party is prohibited from using at trial information or witnesses not disclosed during the discovery period unless the failure to supplement was substantially justified or harmless. Fed.R.Civ.P. 37(c)(1); <u>R & R Sails, Inc. v. Ins. Co. of the State of Pennsylvania</u>, 673 F.3d 1240, 1246 (9th Cir.2012) (the party facing the preclusion of evidence under Rule 37 "bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless").

To determine whether the introduction of evidence should be precluded pursuant to Rule 37, the Court considers: "(1) the surprise to the party against whom the evidence would be offered; (2)

1   the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would
2   disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for
3   it[s] failure to disclose the evidence." San Francisco Baykeeper v. West Bay Sanitary Dist., 791
4   F.Supp.2d 719, 733 (N.D.Cal.2011) (quoting Dey. L.P. v. Ivax Pharms., Inc., 233 F.R.D. 567, 571
5   (C.D.Cal.2005)).

6       Defendants object that on December 3, 2014, Plaintiff served a supplemental disclosure
7   which listed, for the first time, Martha Balandran, Hilarie Owens, Juanita Nations, Candace Munoz,
8   and Teri Harless (Doc. 41 at 10). They complain also that this disclosure was made six months after
9   the close of discovery and the disclosure failed to list the addresses and telephone numbers for these
10  witnesses along with the topics as to which they had information. Id.

11      Review of the disclosure at issue lists each of the witnesses' names and then notes, "address
12  known by the Bakersfield Police Department. Knowledge as to the events of the evening of the
13  incident." (Doc. 41 at 30-31) It appears that once Defendants' counsel saw these names on the
14  witness list for Plaintiff, she contacted Plaintiff's counsel and requested the witnesses be withdrawn
15  based upon his failure to disclose them. Id. at 37-38. Plaintiff's counsel refused and maintained that
16  they had been disclosed. Id. However, on the same date, Plaintiff's counsel issued the supplemental
17  disclosure referenced above seeming to indicate that it was only counsel's e-mail correspondence
18  requesting the witnesses be withdrawn that triggered the supplemental disclosure. Id. at 34.

19      Plaintiff argues that each of these witnesses is an employee of the City of Bakersfield and, as
20  dispatchers, each played a role in the dispatch of the officers to the scene of the events. (Doc. 55 at
21  8) Plaintiff argues that "this dispatch information was discussed during the depositions of Officers
22  Peck and Achtman" and that "this information has always been in the possession and control of
23  Defendants." (Doc. 55 at 8) However, it is unclear what "dispatch information" was discussed at
24  the depositions of Peck and Achtman and whether this discussion included identifying whether these
25  dispatchers whether they would be called as witnesses. On the other hand, Plaintiff argues that the
26  content of the witnesses' testimony is reflected on the dispatch audio recordings so that there was no
27  harm in the late disclosure of the witnesses' names. Id. Plaintiff argues that the recording was not
28  produced by Defendants until December 17, 2014. Finally, Plaintiff reports also that counsel for

Defendants was told who these witnesses were "once by phone and a second time in open court." Id.

Plaintiff attaches a copy of Defendants supplemental Rule 26 disclosure dated December 17, 2014. (Doc. 55 at 12-18)  However, this document indicates that Defendants would be relying upon, "4. Bakersfield Police Department Master Recording Log, **a copy of which was previously produced in conjunction with defendants' Rule 26 Disclosure**" and "6. One audio CD of dispatch tapes, **a copy of which was previously produced in conjunction with defendants' Rule 26 Disclosure**." Id. at 16.  Thus, it appears that, though Defendants provided a supplemental disclosure, the audio files were produced at the onset of the litigation in 2013.  Moreover, even if it was produced only in December 2014, it is unclear how its production could have impacted Plaintiff's delayed disclosure given he listed the new witnesses' names on his supplemental disclosure issued two weeks before. (Doc. 41 at 29-34)

Though it is Plaintiff's burden to demonstrate why the evidence should not be excluded, he merely argues the disclosure was harmless without providing evidence that this was so.  Likewise, he failed to provide any argument or evidence as to the other Rule 37 factors.  Thus, the motion is **GRANTED**.

**H.     Defendants' Motion in Limine #8 to exclude a "Golden Rule Argument"**

Defendants seek to preclude counsel from requesting jurors "place themselves" in Plaintiff's position—a so-called "Golden Rule Argument." (Doc. 41 at 12-13)  In general, a golden rule argument,

> is essentially a suggestion to the jury by an attorney that the jurors should do unto others, normally the attorney's client, as they would have others do unto them. The typical situation in which such an argument has been employed is the personal injury case in which the plaintiff's counsel suggests to the jurors that they grant the plaintiff the same amount of damages they would want or expect if they were in the plaintiff's shoes. The **courts have generally found the 'Golden Rule' argument improper because a jury which has put itself in the shoes of one of the parties is no longer an impartial jury.**

Minato v. Scenic Airlines, Inc., 908 F.2d 977 at *5 (9th Cir. 1990), emphasis added.  Because argument asking a jury to place themselves in the shoes of a party is improper, the motion is

**GRANTED**.[4]

IT IS SO ORDERED.

   Dated:    **February 2, 2015**                    **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff notes that he does not truly oppose this motion but notes only that the law precludes Golden Rule arguments such that no motion is needed.