# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL A. GONZALEZ-CHAVEZ, | Case No.: 1:12-cv-02053 JLT |
| Plaintiff, | ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS FEES |
| v. | (Doc. 105) |
| CITY OF BAKERSFIELD, et al., | |
| Defendants. | |

Plaintiff Miguel Gonzalez-Chavez seeks an award of attorney's fees pursuant to 42 U.S.C. § 1988. (Doc. 105) Defendants oppose the motion, asserting fees should not be awarded in light of Plaintiff's limited success at trial and, if awarded, the amount should be reduced. (Doc. 106) As discussed below, the Court finds Plaintiff is a prevailing party within the meaning of Section 1988, but fails to demonstrate the amount of fees sought is reasonable. Accordingly, Plaintiff's motion for attorney fees is **GRANTED IN PART**.

I.  **Background**

Plaintiff initiated this action by filing a complaint on December 18, 2012. (Doc. 1) Plaintiff alleged Bakersfield Police Officers Christopher Messick and Dean Barthelmes, as well as the City of Bakersfield, were liable "for the use of excessive force and/or unlawful search and seizure" in violation of the Fourth Amendment. (*Id.* at 6) Plaintiff later dismissed his claim against the City of Bakersfield, and pursued only the claims against Officers Messick and Barthelmes. (Docs. 33-34)

The parties tried the matter before a jury beginning on February 9, 2015. (Doc. 73) The jury deliberated for a day-and-a-half, and returned a verdict in favor of Defendant Barthelmes and against Defendant Messick. The jury found Messick used excessive force and awarded compensatory damages for past pain and suffering in the amount of $100.00. (Doc. 81 at 1, 2) Plaintiff filed a motion for a new trial, which was denied on March 18, 2016. (Doc. 104)

On April 15, 2016, Plaintiff filed the motion for attorney fees now pending before the Court. (Doc. 106) Defendants filed their opposition to the motion on May 3, 2016 (Doc. 107), to which Plaintiff filed a reply on May 10, 2016 (Doc. 107). The Court heard the oral arguments of the parties on May 17, 2016.

## II.     Evidentiary Objections

Defendants contend Plaintiff failed to present any admissible evidence in support of the motion for attorneys' fees. (Doc. 106 at 12-13) Defendants contend Mr. Kawai's "statements regarding the background, training, experience, billing practices, and billing by other attorneys is nothing more than hearsay." (*Id.* at 13, emphasis omitted)

### 1.     Background and experience of each attorney

Defendants object to Mr. Kawai's statements regarding the experience of each attorney as hearsay. (Doc. 106 at 13) For purposes of calculating reasonable fees with the Laffey Matrix, Mr. Kawai reported Martha Rossiter "had 4 to 7 years of experience;" J. Miguel Flores "had 8-10 years of experience;" Matthew Jackson "had 11 years of experience;" and Daniel Rodriguez had "more than 20 years of experience." (Doc. 105 at 10-11, Kawai Decl. ¶ 9) However, according to Defendants, Mr. Kawai "is not competent, nor does he have personal knowledge[,] to attest to the background, training, experience, or reputation of any attorney other than himself." (Doc. 160 at 13)

Notably, however, the California State Bar website provides the credentials of each attorney, including education, the number of years active as an attorney, and whether the attorneys have been subject to disciplinary proceedings. The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Accordingly, the Ninth Circuit determined the information

contained on the California State Bar website is subject to judicial notice. *White v. Martel*, 601 F.3d 882, 885 (9th Cir. 2010).

Therefore the Court takes judicial notice of the admission dates for each of the attorneys who worked on this action—including Martha Rossiter, Jose Miguel Flores, Matthew Jackson, John Kawai, and Daniel Rodriguez—as well as their disciplinary records.

2. Billing practices and hours worked

Defendants argue Mr. Kawai "is not competent to attest to the billing practices of any attorney other than himself and is not competent to authenticate the time sheets for any attorney other than himself." (Doc. 106 at 13). For example, Defendants contend Mr. Kawai "does not have personal knowledge about what Ms. Rossiter's billing practices are, when she entered time, how she entered time, etc." (*Id.*) Therefore, Defendants contend the statements regarding the billing practices and hours work should be deemed as inadmissible hearsay. (*Id.*)

Defendants observe, "In *Kranson v. Fed. Express Corp.*, 2013 U.S. Dist. Lexis 173499, *17 (N.D. CA Dec. 11, 2013), the Plaintiff's attorney submitted a declaration seeking to recover not only her time, but the time spent by a paralegal in the office." (*Id.*) However, the Court rejected the declaration explaining that "the best evidence to explain the nature of her work, hours, and experience, would have been a declaration" from the paralegal herself. *Kranson,* U.S. Dist. LEXIS 17499 at *18. Similarly, Defendants note the Ninth Circuit declined "to allow an attorney to attest to time spent by someone else in his office[,] finding that such an attestation was hearsay." (*Id.*, citing *Muniz v. UPS*, 738 F.3d 214 (9th Cir. 2013)). In *Munoz*, the attorney filed a declaration in support of a motion for attorney fees in which he attested to the hours his paralegal worked on the action. *Muniz*, 738 F.3d at 222-23. The attorney "stated that he had watched [the paralegal] reconstruct her hours using the same information he used, and that the attached spreadsheet showed her hours." *Id.* at 223. The defendant objected to the attorney's "statement and the accompanying spreadsheet" as "inadmissible hearsay." *Id.* The Ninth Circuit determined "that the only reasonable interpretation" of the attorney's declaration was that the paralegal calculated her hours, and provided this information to the attorney. *Id.* Accordingly, the Court determined the declaration and the spreadsheet were hearsay, and remanded to the district court to determine "whether any

hearsay exception applies." *Id.* at 223, 227.

Defendants also rely upon *Yeager v. AT & T Mobility, LLC*, 2012 WL 6629434, at *2 (E.D. Cal. Dec. 19, 2012) for the proposition that attorney time sheets are not self-authenticating and that each attorney must file his/her own declaration attesting to the time spent on the case for the time to be recoverable. The Court agrees as to the former proposition but disagrees as to the latter. Notably, *Yeager* held only that an attorney who lacks personal knowledge of the time spent by another attorney cannot attest to the fees sought by that other attorney. *Id*. at 3. Here, the business records *are* authenticated by Mr. Kawai, who is acting as the firm's custodian of records.

In contrast to *Kranson* and *Munoz,* in this case, Mr. Kawai provided not only a declaration and not just a spreadsheet, but also reviewed and provided the business records of Rodriguez & Associates. A document is a "business record" pursuant to Rule 803 of the Federal Rules of Evidence when:

> (A) the record was made at or near the time by--or from information transmitted by-- someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;

Fed. R. Evid. 803(6). A "custodian or other qualified witness" must provide testimony to these conditions. (*Id.*) Here, Mr. Kawai attests he has "personal knowledge… of the firm's civil rights case intake and timekeeping practices since the time [he] joined the firm in 2010." (Doc. 105 at 8, Kawai Decl. ¶ 1) According to Mr. Kawai,

> All of the attorneys at Rodriguez & Associates use timekeeping software to create time logs of time spent on civil rights cases such as the present case and other cases eligible for attorneys' fees awards. Our custom and practice is to enter our time and a description of the work we did in that time contemporaneously, or if we are away from our office, to manually keep notes of our time and enter that time into our computer when we return to the office. Each attorney is assigned a unique code that indicates who performed what work, for how long, and when, on a particular case. For example, Daniel Rodriguez is "DR", Matthew Jackson (who is no longer with the firm) is "MJ", Martha J. Rossiter (no longer with the firm) is "MJR", J. Miguel Flores goes by "MF", and I go by "JK".

(*Id.* at 9, Kawai Decl. ¶ 6) Because Mr. Kawai reports the timesheets were kept in the regular course of business and entering time at or near the time of the activities is a regular practice for lawyers at Rodriguez & Associates, the entries made in the timekeeping software are admissible as

business records.

Mr. Kawai reports that he "personally printed the timesheets associated with Mr. Gonzalez-Chavez's case that were maintained in the course of the firm's business, and… reviewed them." (*Id.*, Kawai Decl. ¶ 7)  Based upon that review, Mr. Kawai calculated the number of hours each attorney spent on the action, and attached a copy of the timesheets as an exhibit to his declaration. (*Id.* at 10, Kawai Decl. ¶ 8)  Significantly, "personal knowledge can come from the review of the contents of business records and an affiant may testify to acts that she did not personally observe but which have been described in business records." *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1275 n.2 (N.D. Cal. 2014).

Accordingly, Mr. Kawai has sufficient personal knowledge to authenticate the business records and provides sufficient foundation to admit the records as an exception to hearsay.  Thus, Defendants' objections to the admissibility of the evidence are **OVERRULED**.

### III.     Attorney Fees under 42 U.S.C. § 1988

A district court may, in its discretion, award a reasonable attorney's fee to the prevailing party in a civil rights action. 42 U.S.C. § 1988(b).  Under Section 1988, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotation marks omitted).

### IV.     Discussion and Analysis

#### A.     Plaintiff is a prevailing party

As an initial matter, Defendants contend Plaintiff should not be rewarded fees "because the Plaintiff was not a prevailing party who would be entitled to an award of fees within the meaning of 42 U.S.C. §1988. (Doc. 106 at 9)  Significantly, "[t]here is no rule of proportionality in a civil rights action under § 1988." *Archer v. Gipson*, 2015 U.S. Dist. LEXIS 172270 at *14 (E.D. Cal. Dec. 28, 2015), *citing Blanchard v. Bergeron,* 489 U.S. 87, 96 (1989); *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986).  The Supreme Court specifically "reject[ed] the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *Rivera*, 477 U.S. at 574.  As the Court explained in *Blanchard*, "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional

5

rights that cannot be valued in monetary terms." *Id.*, 489 U.S. at 96. Thus, a claimant's financial success is not determinative of whether a fee should be awarded. *See Rivera*, 477 U.S. at 574; *Blanchard*, 489 U.S. at 96.

To be entitled to fees under Section 1988, a civil rights litigant must be the prevailing party and the relief "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000). For example, "[t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, *Hewitt*, *supra*, 482 U.S., at 760, 107 S.Ct., at 2675, or comparable relief through a consent decree or settlement, *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980)." *Farrar*, at 111. Thus, though plaintiff's damage award was small, the Court finds he *is* a prevailing party in this litigation.

### B.     Plaintiff is entitled to a fee award

Defendants argue the verdict "against one officer in the amount of $100… does not equate to any sort of meaningful victory for the Plaintiff." (*Id.*) According to Defendants, the degree of Plaintiff's success shows "low fees or no fees" should be awarded. (*Id.*, citing *Farrar v. Hobby*, 506 U.S. 103 (1992) [holding that "when a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all."]) Notably, defendants rely on *Aponte v. City of Chicago*, 728 Fed.3d 724, 728 (7th Cir. 2013) in which the Seventh Circuit reaffirmed its understanding of *Farrar* that denial of a fee award may be proper where there is a significant difference between the amount the plaintiff requested from the jury and the amount the jury awarded. Notably, *Aponte* impliedly found that absent such a request, this *Farrar* factor does not support a trial court's decision to award no fees at all.

In *Thomas v. City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005), the Ninth Circuit reversed an order denying attorney's fees where the plaintiff received compensatory damages, though the amount was quite small. The Court held,

> Plaintiff contends that reliance on *Farrar* was error. We agree. The district court used *Farrar* as a vehicle to arrive at the ultimate denial of Plaintiff's request for fees. After categorizing *Farrar* as a "primary case" for analyzing a request for a prevailing plaintiff's attorney's fees, the district court stated that *Farrar* "cautions that

any fee award must be evaluated by comparing the extent of the plaintiffs' success with the amount of the award ... [and] recognizes that even where a plaintiff formally or technically prevails, sometimes the only reasonable fee is no fee at all." *Thomas*, No. 01–5138 RBL, at *6 (internal citation and internal quotation omitted). In so characterizing *Farrar*, the district court missed its central holding and improperly applied it to this case. The district court characterized *Farrar* as a case authorizing an award of no attorney's fees, notwithstanding the fact that plaintiff prevailed, because the plaintiff did not prevail enough. *Farrar's* holding is much more limited. In *Farrar*, the United States Supreme Court decided the propriety of a fee award when the plaintiff was awarded only nominal damages. It held that, although a plaintiff is technically "prevailing" when awarded nominal damages, a formal or technical victory may, in some circumstances, only support an award of no fees. 506 U.S. at 115, 113 S.Ct. 566. By contrast to the plaintiff in *Farrar* who was awarded only nominal damages, Plaintiff here recovered a total of $35,000: $15,000 in compensatory damages and $20,000 in punitive damages. The jury's award of punitive damages alone is sufficient to take it out of the nominal category. Therefore, the district court's reliance on *Farrar* was improper.

> The proper analysis requires that a prevailing plaintiff only be denied an award of attorney's fees when special circumstances exist sufficient to render an award unjust. *Hensley*, 461 U.S. at 429, 103 S.Ct. 1933. In applying the "special circumstances" exception, we focus on two factors: "(1) whether allowing attorney fees would further the purposes of § 1988 and (2) whether the balance of the equities favors or disfavors the denial of fees." *Gilbrook v. City of Westminster*, 177 F.3d 839, 878 (9th Cir.1999)

*Id.* In remanding the matter, the Court ordered,

> On remand, the district court must determine the reasonable fee for Plaintiff in this case. Because Plaintiff "achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436, 103 S.Ct. 1933 (emphasis added). Therefore, the district court's inquiry is more searching, though it "should not result in a second major litigation." *Id.* at 437, 103 S.Ct. 1933. In such cases, we have employed a two-part test: (1) whether Plaintiff prevailed on unrelated claims ("[h]ours expended on unrelated, unsuccessful claims should not be included in an award of fees"), and (2) whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir.2003) (internal quotation omitted).

*Id.* To do this, the Court instructed,

> To determine whether the claims are related, the district court should focus on whether the claims on which Plaintiff did not prevail "involve a common core of facts or are based on related legal theories." *Id.* (emphasis in original). [Footnote] To the extent the claims are related, Plaintiff should recover reasonable fees for prosecuting those claims. However, a determination that certain claims are not related does not automatically bar an award of attorney's fees associated with those unrelated claims; work performed in pursuit of the unrelated claims may be inseparable from that performed in furtherance of the related or successful claims. We recognize the difficulty in parsing through Plaintiff's claims to determine relatedness and in no way imply which of the myriad claims brought by Plaintiff are related to his successful claim. That is for the district court to decide.

*Id.*, footnote omitted.

7

Here, Plaintiff had only one cause of action, which asserted a claim of excessive force under the Fourth Amendment.  Though he brought the same claim against Officer Barthelmes and was unsuccessful on this claim, the Court cannot find that this claim is distinct from that brought against Messick.  Indeed, though the jury apparently felt the actions of the officers were separable—and the Court agrees that there was a reasoned basis for doing so (See Doc. 104)—the claims contained a common core of facts.  Accordingly, the Court must consider the reasonable fee to be awarded without deducting amounts attributable to the claim against Officer Barthelmes.  On the other hand, the stipulation dismissing the City of Bakersfield failed to indicate whether the parties agreed to bear their own costs.  (Doc. 33)  However, once again, the Court does not find that the claim against the City is unrelated to the successful claim Plaintiff successfully prosecuted.  Thus, thought he Court considers Plaintiff's failure to prevail against Barthelmes and the City of Bakersfield when evaluating the reasonableness of the ultimate fee it will award.

**B.     Fees awardable**

The Court determines a reasonable fee award "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida , v. Dunne*, 915 F.2d 542, 545 n. 3 (9th Cir. 1990) (citing *Hensley*, 461 U.S. at 433)).  The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

1.     Hourly rates

The rates sought by counsel range from $300 to $520 per hour.  (*See* Doc. 105 at 10-12, Kawai Decl. ¶ 10)  The Supreme Court determined that attorneys' fees should be calculated according to the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984).  In general, the "relevant community" for purposes of determining the prevailing market rate, is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  Consequently, when a case is filed in the Fresno Division of the Eastern District of California, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate." *See Jadwin v.*

*County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

Here, to determine reasonable hourly rates for purposes of calculating the lodestar, Mr. Kawai "consulted the Laffey Matrix," and determined:

> In the relevant 2014-2015 timeframe, attorneys such as Martha Rossiter, who had 4 to 7 years of experience, billed at the rate of $300 per hour.  Prior to joining Rodriguez & Associates, Ms. Rossiter had significant trial experience as a result of her work with the Kern County Public Defender's Office. Attorneys such as J. Miguel Flores, who had 8-10 years of experience, billed at $370 per hour. Mr. Flores had significant experience litigating against government entities and major law firms in a land-use context prior to joining Rodriguez & Associates in 2010, since which time he has handled complex personal injury and civil rights cases.  Attorneys such as Matthew Jackson, who had 11 years of experience, billed at $460 per hour.  Mr. Jackson had been an accomplished prosecutor and trial attorney in Cleveland, Ohio before joining Rodriguez & Associates.  In the same timeframe, attorneys with more than 20 years of experience, such as Daniel Rodriguez, billed at the rate of $520 per hour.

(Doc. 105 at 10-11, Kawai Decl. ¶ 9)  However, this Court rejected rates based upon the Laffey Matrix as irrelevant to determining reasonable hourly rates for' counsel in the Eastern District of California.  *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("just because the Laffey matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away").  Rather, having reviewed the hourly rates in the Fresno Division of the Eastern District, this Court found the acceptable rates "for an attorney with less than ten years of experience" ranged "between $175 to $300," noting that attorneys with four and five years of experience were recently awarded $200 per hour.  *Silvester*, 2014 WL 7239371 at *4 n.2 (E.D. Cal. Dec. 17, 2014) (citing *Willis v. City of Fresno*, 2014 U.S. Dist. LEXIS 97564 (E.D. Cal. July 17, 2014); *Gordillo v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 84359 (E.D. Cal. June 19, 2014)).  In addition, "the hourly rate[] generally accepted in the Fresno Division for competent experienced attorneys is between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester*, 2014 WL 7239371 at *4. Consequently, the hourly rates sought by Plaintiff's counsel exceed the ranges awarded in Fresno Division of the Eastern District of California.

Accordingly, for purposes of the lodestar calculation the hourly rates for each attorney must be adjusted.  Hours for Martha Rossister will be calculated at an hourly rate of $200; John Kawai's

1 hours will be calculated an hourly rate of $225; J. Miguel Flores' hours will be calculated at an
2 hourly rate of $300; Matthew Jackson's hours will be calculated at a rate of $325; and Daniel
3 Rodriguez' hours will be calculated at the rate of $380 per hour.

    2. Time to be awarded

Defendants contend the hours billed "are unreasonable, lack sufficient description[s], and are duplicative." (Doc. 106 at 17, emphasis omitted)  Further, Defendants assert the time sheets indicate Plaintiff seeks to recover time related to his criminal trial and clerical work, and such time should not be awarded.  (*Id.* at 20-21)

    a. *Plaintiff's criminal trial*

Defendants contend Plaintiff should not be awarded fees related to his criminal case because it "ha[d] absolutely nothing to do with this case." (Doc. 106 at 20)  On the other hand, Plaintiff contends it was appropriate to " bill[]for time spent at criminal hearings for Plaintiff, and not work generally spent on the case, because closely following the criminal proceedings was necessary to anticipate and, to the extent possible, avoid, Heck v. Humphrey issues that could result from a conviction in the criminal case." (Doc. 107 at 8)  At the hearing, platniiff's counsel conceded that these amounts should not be included.

Significantly, the Supreme Court determined a prevailing party is entitled to attorneys' fees for time "reasonably expended *on the litigation.*" *Webb v. Board of Educ. of Dyer Co.*, 471 U.S. 234, 242 (1985) (emphasis in original).  Though the events in the criminal matter may have been related to the civil action, the hours expended in the representation of Plaintiff in the criminal matter were not part of this civil matter, which was initiated in December 2014.  Consequently, the Court finds the following hours must be deducted from the lodestar calculation:

| Date | Attorney | Task | Time |
|---|---|---|---|
| 1/14/2012 | MJ | Correspondence with JR re: scene investigation | 0.1 |
| 1/18/2012 | MJ | Correspondence with JR re: Walmart lot, investigation report, etc. | 0.4 |
| 2/8/2012 | MJ | Correspondence with Client re status of case, research investigation | 0.3 |
| 3/2/2012 | MJ | Court with Client re Criminal Case from Incident | 1.0 |
| 3/16/2012 | MJ | Court Hearing with Client re Criminal Case from Incident | 1.5 |
| 4/27/2012 | MJ | Court Hearing with Client re Criminal Case from Incident | 1.5 |
| 5/18/2012 | MJ | Pretrial Conference for Client Criminal Case | 2.0 |
| 6/15/2012 | MJ | Pretrial Court Appearance with Client re Criminal Case | 2.0 |

| Date | Attorney | Task | |
|---|---|---|---|
| 6/29/2012 | MJ | Pretrial Court Appearance with Client re Criminal Case | 1.5 |
| 12/13/2012 | MJ | Draft letter to Virginia Rameriz to get status of Miguel's probation transfer | 0.3 |
| 12/16/2014 | MJR | Probation Modification w Client Day 1 | 1.5 |
| 12/17/2014 | MJR | Probation Modification w Client Day 2 | 1.5 |

(Doc. 105-1 at 2, 14-24, 96-97) This results in a total deduction of **13.6** hours from the lodestar, 10.6 hours for Matthew Jackson, and 3.0 hours for Martha Rossiter.

### b. Clerical tasks

Defendants observe that the time sheets indicate several clerical tasks, which should not be included in the lodestar, including entering dates on the calendar and preparing deposition notices. (Doc. 106 at 20-21) Courts have discounted paralegal billing entries for "clerical tasks" such as "filing, transcript, and document organization time." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997) (approving the court's elimination of hours spent on secretarial tasks from the lodestar calculation); *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court documents or copying").

Plaintiff agrees "certain of the description of tasks in this case appear clerical in nature, so retracts his request for any such time." (Doc. 107 at 8) Accordingly, the Court reviewed the time sheets and determined the following tasks are clerical in nature, and should be deducted from the lodestar calculation:

| Date | Attorney | Task | Time |
|---|---|---|---|
| 12/18/2012 | MJ | E-file Complaint and Civil Cover Sheet with Eastern District of California | 0.5 |
| 6/3/2013 | MJR | Entered all court dates from scheduling order | 1.5 |
| 6/14/2013 | MJR | Processed discovery propounded by Defendants, entered on calendar | 0.8 |
| 1/15/2014 | MJR | Prepared depo notices: Christopher Messick, Dean Barthelmes, Christopher Peck, and Helmuch Acthmann | 0.7 |
| 3/3/2014 | MJR | Prepared and file[d] 2nd notice of depositions | 0.3 |
| 3/31/2014 | MJR | Prepared depo notices, for PMQ, etc. | 0.5 |
| 4/1/2014 | MJR | Prep amended depo notice for Burdick | 0.1 |
| 4/15/2014 | MJR | Amended notices of depos, PMQ and Burdick | 0.4 |
| 4/20/2014 | MJR | Amended notice of depo- Burdick | 0.2 |
| 4/22/2014 | MJR | Prep Depo Ntc of Williamson | 0.2 |
| 7/17/2014 | MJR | Renotice of Depo for Expert Huene, M.D. | 0.1 |

11

| 7/29/2014 | MJR | 3rd Depo Notice w RTP for Huene, M.D. | 0.1 |
| 8/7/2014 | MJR | Depo Notice for Thomas Degenhardt, MD | 0.2 |

(*See* Doc. 105-1 at 36-83)  This results in a total deduction of **5.6** hours from the lodestar, including 0.5 hours for Matthew Jackson, and 5.1 hours for Martha Rossiter.

### c.   Time related to unsuccessful claims

Defendants contend the time awarded should be reduced where it was related to Plaintiff's abandoned claim against the City and unsuccessful claim against Officer Barthelmes.  However, it can be "proper for a court to award fees against one defendant for time spent litigating against another." *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1075 (N.D. Cal. 2010).

As noted above, the Court concludes the claims against Officer Barthelmes and the City of Bakersfield were related to the claim against Officer Messick.  Thus, the time spent on these claims will be considered in determining the appropriate fee award.  (*Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005), quoting *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003).

### d.   Block billing and overbilling time

Defendants contend the hours awarded should be reduced because the time sheets include "block billing" (Doc. 106 at 18), where the timekeeping format "bundles tasks in a block of time, [and] makes it extremely difficult for a court to evaluate the reasonableness of the number of hours expended." *Aranda v. Astrue*, 2011 U.S. Dist. LEXIS 63667, at *13 (D. Ore. June 8, 2011).  The Ninth Circuit observed that "block billing makes it more difficult to determine how much time was spent on particular activities."  *Welch v. Metro. Life Ins.*, 480 F.3d 942, 948 (9th Cir. 2007).

Notably, as Defendants observe, there are several entries that include more than one task for the identified date.  For example, on March 16, 2014, Ms. Rossiter indicated she expended 2.5 hours for "Depo prep, cont'd. reviewing documents, etc." (Doc. 105-1 at 47)  However, there is no indication as to what documents were being reviewed, and if they were related to the preparation of the deposition.

In addition, review of the timesheets reveals excessive overbilling on Court appearances by Ms. Rossiter.  For example, on May 14, 2014, Ms. Rossiter billed 1.0 hour for a conference with Heather Cohen and the Court (Doc. 105-1 at 68), while the Court's records indicate the conference

lasted for only 30 minutes.  Ms. Rossiter entered 1.7 hours for the pre-trial conference with the Court on December 10, 2014 (Doc. 105-1 at 91), which lasted only 17 minutes. Curiously, she also logged 2.0 hours for a pre-trial conference on February 2, 2015 (Doc. 105-1 at 114), which did not occur. Finally, Ms. Rossiter indicated 2.5 hours for the "Hearing re [Motions in Limine]" (Doc. 105-1 at 113), which took one hour and five minutes.  Accordingly, the times reported by Ms. Rossiter for these Court appearances will be reduced from 7.2 hours to 1.9 hours, or a total deduction of **5.3 hours**.

Moreover, the overbilling—particularly when coupled with the block format— causes grave concerns regarding the accuracy of the remainder of the hours reported by Ms. Rossiter.  Notably, the Ninth Circuit explained that, where the attorney presents time expended in "blocks," the Court may "simply reduce[] the fee to a reasonable amount." *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000); *see also Welch*, 480 F.3d at 948 ("We do not quarrel with the district court's authority to reduce hours that are billed in block format").  A district court may "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion" for block billing.  *Moreno v. City of Sacramento*, 534 F.3d 106, 1112 (9th Cir. 2008). Accordingly, the Court finds it appropriate to reduce the remainder of the number of hours reported by Ms. Rossiter by 10%, for a total reduction of **23.11 hours**.

### e.     Duplicative tasks

Finally, Defendants argue that Plaintiff should not be awarded time for tasks performed by Daniel Rodriguez, because "[h]e never made an appearance in this matter and did not participate in the trial…"  (Doc. 106 at 20)  Rather, Defendants contend the majority of his reported time was expended meeting with Ms. Rossiter for updates on the case, and attending the same focus group. (*Id.* at 19-20)

Notably, it is apparent from the record that Mr. Rodriguez was not actively involved in the matter, but received status updates from Ms. Rossiter after she attended depositions.  (*See,* Doc. 105-1 at 3-10, 12-13)*,* In addition, Mr. Rodriguez attended the same focus group as Ms. Rossiter on January 3, 2015.  (*See* Doc. 105-1 at 10, 98)  However, in general, two attorneys cannot bill for attending the same meeting or communicating with each other.  *In re Mullins*, 84 F.3d 459, 467,

318 U.S. App. D.C. 19 (D.C. Cir. 1996); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010). Similarly, time billed by an attorney is not reasonably expended where it serves as training. *Gauchat-Hargis v. Forest River*, *Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013). Because Plaintiff does not to present any evidence that the time Mr. Rodriguez spent in the status meetings or attending the focus group was necessary, the failure of evidence results in a reduction of **20.75 hours.**

      3.      Lodestar Calculation

With the hourly rates and time adjustments set forth above, the lodestar in this action is **$48,166.50**:

| Attorney | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Matthew Jackson | 4.4 | $325 | $1,430.00 |
| J. Miguel Flores | 7.2 | $300 | $2,160.00 |
| Daniel Rodriguez | 4.0 | $380 | $1,520.00 |
| Martha Rossiter | 207.97 | $200 | $41,594.00 |
| John Kawai | 6.5 | $225 | $1,462.50 |
|  |  |  | **$48,166.50** |

On the other hand, the Court may adjust the lodestar upward or downward considering the following factors adopted by the Ninth Circuit in a determination of the reasonable fees:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). However, the Court has since determined that the fixed or contingent nature of a fee and the "desirability" of a case are no longer relevant factors. *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1095, n.5 (9th Cir. 2011) (citing *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992)). However, in favor of no departure from the lodestar, the Court notes, the hours remaining above are reasonable for prosecution of this case, the plaintiff was Spanish speaking, which complicated the representation, the experience and reputations of the attorneys involved is significant and the

representation existed for more than three years. In favor of departure from the lodestar, the case presented no difficult or novel issues. Rather the case involved a straightforward claim of excessive force. Though there was a use of a taser, there were no other complicating factors such as the use of a K-9 or the use of deadly force. Moreover, the evidence related to the use of the taser was fairly minimal. Thus, the skill needed to handle the matter was low-to-moderate.

In addition, Plaintiff has not provided the Court any information about of any lost opportunities for the attorneys due to the decision to take on this matter. He has not provided information about the customary fee for such a representation or the awards in similar cases. Most important, the evidence demonstrates that Plaintiff's economic losses for treatment for his injuries was more than $40,000 which does not include lost wages (Doc. 106-1 at 9)—which Plaintiff testified he suffered as a result of his injuries—and the fact that Plaintiff demanded $250,000 to settle the matter a few months before trial. When compared to the insignificant results obtained, the Court finds that the lodestar should be adjusted downward by 25 percent. *Hensley*, 461 U.S., at 436 ["the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained."] Thus, the Court will award $36,124.88.

### V.     Conclusion and Order

There is a strong presumption that the lodestar is a reasonable fee. *Gonzalez*, 729 F.3d at 1202; *Camacho*, 523 F.3d at 978. However, the Court may adjust the lodestar "upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000 (internal punctuation and citations omitted). Based upon the Court's review of the record including the timesheets of counsel and the results obtained as well as the other factors set forth in *Kerr¸* the Court finds this is a case that justifies a downward adjustment of the lodestar.

///
///
///
///

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's motion for attorney's fees is **GRANTED** in the amount of $36,124.88.

IT IS SO ORDERED.

Dated:   **May 17, 2016**                                  **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE